**FRIEDMAN v. McCAMPBELL, Federal Prohibition Administrator, et al.**

No. E–5814.

District Court E. D. New York.

Feb. 25, 1932.

George Eilperin, of Brooklyn, N. Y., for plaintiff.

Howard W. Ameli, U. S. Atty., of Brooklyn, N. Y., for defendants.

BYERS, District Judge.

The plaintiff had been engaged for nearly thirty years in manufacturing and selling nicotine extract, tobacco fumes for fumigating greenhouses, tobacco powder and poultry powder, and kindred products, when on October 15, 1921, he rented under a two-year lease the premises No.1–47th avenue, Long Island City. Prior thereto and for twenty-five years he had been located at 285 Metropolitan avenue, Brooklyn. In the conduct of his business the plaintiff has had to make reports to the Internal Revenue Department each month, during the past twenty-five years or more, in connection with a license to manufacture tobacco products, and has been under bond during that period of time.

Subsequent to October 15, 1931, the plaintiff was equipping a plant at the above address, in which to carry on his enterprise, and had caused to be installed numerous tanks, and piping connecting the same.

The process of installation had not been finished by November 19, 1931, at which time his plant was in an incomplete state, and he had not undertaken to manufacture his products at that time. He had, however, purchased 105 drums of denatured alcohol C. D. 5 from the Whitehall Trading Company of 32 Broadway, New York City, containing on an average of about 50 gallons each. Apparently all had been delivered by November 19, 1931. Of these, about 75 drums had been emptied into eight vats having each a capacity of from 1,200 to 1,400 gallons; the solution in each vat was about ½ water and ½ C. D. 5, and there had been added a portion of Epsom salts. This solution was unfit for beverage purposes according to defendants' testimony.

There were also in the premises 10 barrels of "mineral oil" and the testimony does not show that any of them had been opened on November 19, 1931. There were also 150 bales of tobacco stems, etc., and tobacco was scattered all along a platform on the third floor.

The solution in the vats was described by the plaintiff as a "stock" solution which had been prepared for the reception of the tobacco stems used by him in the preparation of some of the products which he makes and sells.

On November 19, 1931, a squad of six policemen in charge of a lieutenant visited the premises under instructions to ascertain if a fire hazard existed as defined by municipal ordinance, i. e., a place where alcohol (denatured) was kept, without a permit.

This force, proving adequate to accomplish the purpose of such a mission, arrested one Petrillo who was engaged in installing the piping, after learning from him that the plaintiff was supposed to have such a permit, and that Petrillo was not familiar with the manufacturing processes intended to be conducted in the premises, by the plaintiff. It subsequently developed that the plaintiff had procured an application for a permit, but had not filed it, pending the completion of his plant.

For this violation of the ordinance, Petrillo pleaded guilty and was fined $5.00. He was arrested also for an alleged violation of the Volstead Act, but at the time of this hearing he had not come to trial.

The police took possession of the plaintiff's premises at once, and this possession has been taken over by the above-named defendants, and is now held by them.

The plaintiff has been excluded from his property and forbidden to conduct his business, by the defendants.

On November 21, 1931, the plaintiff called upon the United States Attorney for this district, and explained the nature and character of his business, and produced correspondence and orders from reputable persons and corporations for the purpose of showing the good faith of his enterprise. He asked that he be restored to the possession of his property and his business, but failed in the endeavor.

On November 24, 1931, the plaintiff caused his bill of complaint herein to be filed, and on November 25th papers in behalf of a temporary injunction were prepared and served. Apparently the motion was reached on December 9, 1931, and submitted on the 12th of that month, and denied the same day upon the ground that the merits of the controversy could not be determined from the papers, but a preference in the trial was granted for December 28, 1931. The hearing proceeded on January 7, 1932, and all briefs were filed by the 24th of that month. The plaintiff, therefore, has been diligent in the assertion of his cause.

From all the testimony in the case, the following findings and conclusions are made:

1. The business of the plaintiff has been shown to be that of manufacturing and selling nicotine extract, nicotine poultry powder, nicotine dust, tobacco fumes for fumigating greenhouses, tobacco stems, and kindred products, during the past 25 years.

2. During that time his customers have included: Peter Henderson, Gross Rubin Company, J. Pierpont Morgan, John D. Rockefeller, Otto Kahn, Peter Dunn, Vassar College, and Yale and Columbia Universities.

3. The plaintiff has advertised his business by circulars, printed matter, etc., and samples of such have been received in evidence.

4. The defendants have made no effort to disprove the matters contained in the foregoing findings.

5. On or about October 15, 1931, he acquired under a two-year lease, the building and premises No.1–47th Avenue, in the borough of Queens, in this district.

6. Between that date and November 19, 1931, he was installing a plant in the said premises which was so designed as to be capable of carrying out the manufacturing processes described by the plaintiff.

7. The processes described by the plaintiff are reasonable for the extraction of nicotine from tobacco.

8. The plant had not been completed on November 19, 1931, and the plaintiff had not completed any manufacturing of any product in the said premises.

9. On the last-mentioned date the plaintiff had not procured a permit to keep more than ten gallons of denatured alcohol in the said premises, as required by a city ordinance.

10. On the said date there had been delivered to the plaintiff at the said premises 105 drums of denatured alcohol of a capacity of about 50 gallons each (C. D. 5) which he had purchased from Whitehall Trading Company, of 32 Broadway, New York.

11. All but about 30 of said drums had been opened, and their contents had been emptied into 8 vats, each having a capacity of from 1,200 to 1,400 gallons, in the said premises.

12. The serial numbers and labels had been removed from some or all of the 30 unopened drums, the exact facts not having been shown.

13. The said eight vats contained equal parts of C. D. 5 and water, and some Epsom salts.

14. The liquid in the vats had separated into layers, the top layer being an oily film. There is no evidence that the plaintiff had introduced mineral oil into the said vats.

15. There were 10 barrels of mineral oil on the premises, but there is no evidence that any had been opened on November 19, 1931.

16. The plaintiff uses completely denatured alcohol C. D. 5 in the manufacture of many of his products, but does not remove the denaturants.

17. The plaintiff had in his possession, on the said date, at the said premises, more than eleven drums of denatured alcohol.

18. The contents of the said eight vats, in the said premises, on the said date, were unfit for beverage purposes.

19. The said contents of the vats could have been redistilled into potable alcohol by subjecting the same to distillation.

20. There is no evidence tending to show that the plaintiff contemplated redistilling the contents of the said vats, and no apparatus capable of being used as a still was found upon the said premises, or elsewhere, so far as this record shows.

21. No containers were found upon the said premises suitable for the transportation of the contents of the said vats as such.

22. The record is barren of any evidence whatsoever tending to connect the plaintiff with any unlawful activities prior to, or at the time above referred to.

23. There were present in the said premises at the said date, 40,000 to 50,000 pounds of tobacco, tobacco dust, and tobacco stems, and about 10 barrels of Epsom salts.

24. The manufacturing processes previously carried on by the plaintiff required the use of tobacco, tobacco stems, tobacco dust, "mineral" oil, and Epsom salts.

25. The plaintiff did not recover, or seek to recover, by redistillation or any other process or means, alcohol which had been denatured as provided by law; nor did he sell, conceal, or otherwise dispose of alcohol so recovered or redistilled.

26. The plaintiff did not possess in the said premises on the said date, either liquor or property designed for the manufacture of liquor intended for use in violating the National Prohibition Act.

### Conclusions of Law.

1. The plaintiff has not produced the records required to be kept on the part of those storing or using 11 barrels or drums or more of completely denatured alcohol in a period of 30 days, as required by article 117 of regulations 3.

2. A violation of that regulation did not authorize or empower the police officers, or the defendants, or any of them, to seize the plaintiff's premises or property, or to exclude him therefrom, or forbid him therein to transact the business in which he has been shown to have been engaged for upwards of twenty-five years.

3. The possession by the defendants, or either of them, of the plaintiff's premises and property is without warrant in any provision of law which has been cited or asserted by the attorney for the defendants in this proceeding.

4. The plaintiff is entitled to an injunction as prayed in his bill of complaint.

Settle decree on two days' notice.